UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 09-60118-CIV-HURLEY

JANICE BURGOS-STEFANELLI,
      **plaintiff,**

**vs.**

SECRETARY JANET NAPOLITANO,
U.S. DEPARTMENT OF HOMELAND SECURITY,
      **defendant.**
_____/

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Janice Burgos-Stefanelli ["Burgos"] sues her former employer, the United States Department of Homeland Security ["the Department"], alleging unlawful retaliation for prior protected activity in violation of Sections 501 and 504(a)(1) of the Rehabilitation Act of 1973, 29 U.S.C. §§ 791, 794(a)(1). The case is currently before the court upon the Department's motion to dismiss, or in the alternative, for summary judgment [DE# 9].

### I. Fact Background[1]

Burgos was hired as a Customs Inspector for the United States Customs Service in Miami in August, 1996. In December, 2001, while working as an inspector at the Foreign Mail Facility at the Port of Miami, Burgos suffered a right hand and wrist injury for which she filed and received workers' compensation benefits. In May, 2002, she suffered a second injury to her right hand and shoulder while in the process of qualifying to use her handgun at the firing range. She again sought and received workers' compensation benefits.

---

[1] The material recited facts, drawn from plaintiff's complaint and the parties' Local Rule 7.5 statements, are either undisputed or taken in the light most favorable to the plaintiff, unless otherwise noted.

In March of 2003, the United States Customs Service became part of the Department of Homeland Security.  Plaintiff continued to work for the Department in the same job capacity under a new title, "Customs and Border Patrol Officer" ("CBPO").

In February, 2004, pursuant to a provisional settlement agreement reached between Burgos and the Department, Burgos agreed to withdraw a then pending EEO complaint against the Department and accept a temporary assignment at Port Everglades, Fort Lauderdale, pending issuance of a fitness for duty evaluation by the Public Health Service. On September 9, 2004, the Public Health Service, per Dr. Haviva Goldhagen, issued final determination that Burgos was not medically fit for full duty as a Customs and Border Patrol Inspector and accordingly recommended that she be stripped of her arming authority.  At that juncture, the Department denied Burgos' request for permanent transfer to Port Everglades, ordered return of firearm and reassigned her back to the Port of Miami. [See Final Summary Judgment Order, *Burgos v Napolitano*, Case No. 06-60371-HUCK-DIV, DE # 27-3]

In August, 2004, Burgos submitted to a "functional capacity evaluation" as part of a fitness for duty examination during which she re-injured her right shoulder.

In December 30, 2004, Burgos filed a second formal complaint of discrimination based on the denied transfer, alleging disability discrimination and unlawful retaliation in violation of the Rehabilitation Act.

In 2005, she submitted a workers' compensation claim for the shoulder re-injury, together with alleged work related stress and emotional issues.  She went out on approved workers'

compensation leave for the physical injury from October 25, 2006 to September 5, 2006. [2]

After returning to work on September, 5, 2006, Burgos remained on the job for approximately six weeks, until October 19, 2006, when she again took leave at the recommendation of her treating psychologists, Drs. Stanley and Carol Seidman, requesting "Leave Without Pay Status" (LWOP) for this intermission. To assess this request, Burgos' supervisor, Ruby Hogan, sought a medical assessment from the Seidmans, who, on November 27, 2006, sent a one page opinion letter offering the following comments:

> Ms. Burgos-Stefanelli has had a complete mental collapse due to the stress of how she has been treated after her work injury. She has requested accommodations and has received retaliation for her requests. This has been documented. Her psychological condition is directly related to her injury at work. She does not have a handgun so the question regarding her ability to carry and use a firearm is not relevant .... [She] is taking the medication Cymbalta for her depression and this would not interfere with her working. . . It is not known at this time what accommodations would be acceptable as much psychological damage has been done to this client. The client loved her job and is very upset that she has been unable to

---

[2] On March 24, 2006 (during her leave), Burgos filed federal suit on her disability discrimination claims, *Janice Burgos v Michael Chertoff*, Case No. 06-60371-CIV-HUCK ["*Burgos I*"]. On January 9, 2007, Judge Huck entered final summary judgment in favor of the Department in *Burgos I*. After plaintiff's Rule 59 motion for reconsideration was denied by Judge Huck, she appealed to the Eleventh Circuit.

On June 23, 2008, the Eleventh Circuit affirmed Judge Huck's ruling that plaintiff was not disabled and had not been subjected to a hostile work environment.

At the same time, it reversed the district court's finding on the retaliation claim, remanding for further findings on the issue of whether the Department's alleged breach of settlement agreement by failing to consult with Burgos' treating physician before rendering final determination on her request for job transfer constituted unlawful retaliation under the Rehabilitation Act.

On remand, Judge Huck found that Burgos had engaged in statutorily protected expression by filing her EEOC claim, but that the Department's alleged breach of the settlement agreement, by failing to honor her transfer request, did not amount to "adverse action" necessary to establish a *prima facie* retaliation claim, and entered final summary judgment accordingly in favor of the Department. [DE # 53, Case No. 06-60371-CIv-HUCK].

By opinion issued June 2, 2009, the Eleventh Circuit affirmed. *Burgos v Napolitano*, 330 Fed. Appx. 187, 2009 WL 1515733 (11th Cir. 2009).

perform her work activities due to her severe anxiety and depression which are directly related to her initial job injury and the retaliative manner that others have demonstrated against her.  She remains unable to work.

[DE# 13-27].

In an "updated" psychological assessment referenced in this report, bearing evaluation date of "11/15/05 - 11/27/06," and report date of "12/15/05 - 11/27/06," the Seidmans diagnosed Burgos with "acute stress disorder, major depressive disorder, post traumatic stress disorder and sleep disorder,"[3] [DE# 13-27, p. 9] listing as "significant contributory factors" the existence of her prior shoulder injury, her reassignment to the Port of Miami, and "apparent administrative mismanagement, harassment and inconsistent decision making" at her place of employment. [DE# 13-27, p. 6]

In the referenced assessment, the Seidmans describe Burgos as "highly unstable" with "severe anxiety and depression" [DE# 13-27, pp. 10-11], and ultimately opine she is "permanently and totally disabled, physically-medically and psychologically," and "not able to perform her duties, including paperwork, calculate effectively even simple tasks, for any effective job functioning."

---

[3]The relevant symptoms reported by Burgos are noted in this report as follows:

Losing track of time, memory problems for recent events, changes in my personality, disturbances in my mood, problems in controlling my emotions and impulses, suspicious or paranoid thinking, emotional withdrawal and isolation, significant loss of interest, change in appetite and weight, problems falling asleep and staying asleep, restless and agitation, decreased energy, feelings of worthlessness, difficulty concentrating or thinking, not being able to enjoy things once enjoyed, muscle tension, feelings of being physically upset, apprehension, excessive vigilance, specific fears, panic attacks, recurrent thoughts which I can't control, nightmares of traumatic experiences, problems using my arms or legs, changes in sensation, concerns about having a serious disease, significant suspiciousness and hostility.

[DE# 23-27, p. 5-6].

4

[DE# 13-27, p. 22].

Hogan determined that the Seidmans' updated report did not provide sufficient information to sustain the requested leave without pay status, and by letter dated December 1, 2006, asked the Seidmans for further explanation as to how their description of Burgos as "temporarily totally disabled" affected her ability to perform as a Customs and Border Protection Officer. [DE#27-5]

By supplemental report dated December 11, 2006, the Seidmans jointly reported that Burgos was "temporarily totally disabled" or "TTD" for "a short period of time due to her reaction to/ perception of, and/or recall of an exposure to a severely stressful event(s)," but that this condition would not prevent her from returning to work "following the cessation of the "ttd" status." They opined "with a high degree of medical probability, with [Burgos] being in possession of carrying a firearm, she should could [sic] carry out her duties as well as any of her colleagues." [DE# 13-29]. Ultimately, they recommended that the Department give Burgos an opportunity to return to duty, with return of her firearm, for a three to six month "observation" period. They stated they were unable to predict how long Burgos' condition would persist, but were hopeful that "there will not be further retaliation and that her mental condition will improve in time." [DE# 13-29].

Finally, the Seidmans concluded their 12-11-06 report with a reference to a completed FMLA request form purportedly attached and submitted on Burgos' behalf (as alternative to assignation of LWOP status). [The Department contends it never received the FMLA form either indirectly through the Siedmans or directly from Burgos.]

On December 12, 2006, Hogan sent letter to Burgos advising that her unscheduled absence commencing October 18, 2006, would be recognized on an "LWOP" basis up through January

6, 2007, and that any leave beyond that time would have to approved through office personnel management or under the FMLA. [DE# 13-28]

On December 19, 2006, Burgos underwent MRI testing revealing additional damage to her shoulder that required surgery.

On December 27, 2006, Hogan issued notice of a proposed 14- day suspension to Burgos based on her alleged AWOL status and failure to timely provide requested medical documentation. Ultimately, the Department did not implement disciplinary action on this charge, which it formally dismissed on May 11, 2007. [DE# 13-26].

On January 10, 2007, Burgos filed a workers' compensation claim on her shoulder injury seeking to establish a leave date of December 19, 2006. On January 19, 2007, during a telephone conversation between Hogan and Burgos, Burgos reiterated the fact of her upcoming shoulder surgery which was then scheduled for February 28, 2007.

By letter dated January 23, 2007, Hogan directed Burgos to undergo a physical fitness for duty examination on February 13, 2007. [DE# 13-30]. Noting that the Seidmans' diagnosis of her psychological condition called into question her ability to perform the duties of her job in a "safe and effective manner," particularly in reference to her "ability to safely handle a firearm" and "ability to appropriately respond to use of force situations" [DE# 13-30], Hogan explained that the Department was required by law to first order a physical examination to explore the existence of any related physical causes before it could order an independent psychiatric exam to verify the extent of any incapacity.

On January 25, January 26 and February 3, 2007, plaintiff's Chief Supervisor, Lucy Nualart, and Assistant Port Director Moises Pacheco telephoned her home seeking to verify her receipt of

6

Hogan's fitness for duty exam order as well as the earlier notice of proposed 14 -day AWOL suspension.  On these same dates, Nualart and Pacheco made  separate unannounced visits to her home to  hand deliver  the documents in question.  On one such  visit, Burgos  claims that Pacheco rang the doorbell and  "pounded" on her front  front door for as long as  four  minutes, while Burgos, inside but too"terrorized"  to answer,  did not respond.

Plaintiff did not submit to the physical  fitness for duty exam as directed on  February 13, 2007, with no prior notice or explanation for her  failure to appear.

On March 9, 2007,  Hogan issued  formal  written  notice of  the Department's proposal to permanently remove Burgos from her position as a Customs and Border Patrol Officer for non-disciplinary reasons,  effective August 15, 2007, based on her medical inability to perform the duties of that position. [DE# 13-34],

On March 21, 2007, plaintiff filed formal retaliation discrimination complaint with the EEOC alleging that the Department subjected her to a hostile work environment in retaliation for prior protected EEO activity in *Burgos I* by:

(1) failing to act on her December 13, 2006 request for FMLA leave;

(2) proposing to suspend her from duty for being absent without leave [AWOL] on December 27, 2006;

(3) ordering her to undergo fitness for duty examination on January 27, 2007;

(4) harassing her with phone calls and unannounced  home visits to ensure her receipt of official documents in January and February, 2007;

(5)  proposing to terminate her employment for being unable to perform her official duties on March 9, 2007.

[DE# 13-8].

By letter dated June 14, 2007, the Department, though Denise Crawford, Director of Field Operations in Tampa, offered Burgos an opportunity, pursuant to 5 C.F.R. 339.02, to supplement the medical record by voluntarily attending a psychiatric evaluation at the Agency's expense, thereby avoiding the need for any physical examination. Plaintiff declined, by letter through counsel dated July 5, 207, stating it was "inappropriate" for the Department to require psychological evaluations when Burgos was under workers' compensation care and treatment for a severe shoulder injury. [DE# 13-22].

On August 3, 2007, Crawford issued final notice removing Burgos from her position as Customs and Border Protection Officer, effective August 15, 2007, based on her medical inability to perform the duties of her position. [DE # 13-35]

On September 13, 2007, Burgos filed a direct appeal of the Department's termination decision to the Merit Systems Protection Board (MSPB), contending that the Department lacked cause to fire her because its decision to terminate was based on a false factual assumption regarding the existence of a permanent disability, and because she had "rightfully" refused to undergo the fitness for duty physical examination ordered by Hogan in light of her then pending shoulder surgery. [DE# 13-36] On November 27, 2007, Burgos withdrew her MSPB appeal with prejudice [DE# 13-37], and on November 30, 2007, the MSPB dismissed that appeal with prejudice [DE# 13-38].

Thereafter, in the earlier filed EEO proceedings upon Burgos' retaliation complaint, on August 29, 2008, an EEOC administrative law judge issued final summary judgment finding insufficient evidence to sustain a *prima facie* retaliation case on any of the challenged employment

actions. [DE# 13- 17].  On October 20, 2008, the Department issued final order implementing that

decision [DE# 13-11].

On  January 23, 2009, plaintiff filed the instant  lawsuit, *Burgos v Napolitano*, Case No. 09-

60118-CIV-HURLEY ("*Burgos II*"), contending that the Department  unlawfully retaliated against

her  in violation of the Rehabilitation Act by:

(1) proposing to terminate her employment on March 9, 2007;

(2) proposing  to suspend her from duty for 14 days for going AWOL  on December 27,

2006;

(3) failing to process her request for leave under the FMLA on December 13, 2006;

(4) ordering her to undergo a fitness for duty exam on January  27, 2007 ;

(5) harassing her with repeated telephone calls and unannounced visits at her home

during January and  February, 2007.

(6) actually terminating her employment on August 1, 2007.

## II. Issues Presented

In its  pending motion  to dismiss and/or for summary  judgment,  the  Department urges,

first, that  this court  lacks subject jurisdiction over Burgos'  "actual termination" retaliation claim

because Burgos  elected to first file a direct appeal from  the  "actual termination" decision with the

Merit  Systems  Protection  Board  (MSPB),   thus  designating  the  MSPB  as  the  exclusive

administrative forum in which she was bound to exhaust her appeal of the "actual termination"

decision.

Second,   it contends that Burgos  is unable to establish a *prima facie* claim of retaliation

under the Rehabilitation Act  because, with the exception of the "actual termination" claim, the

9

other challenged employment actions  do not qualify as  "adverse employment actions"  under the

Act.

Third, as to all claims, the Department contends that Burgos is unable to establish a *prima*

*facie* case because she adduces no direct or indirect evidence of  retaliatory motive  (i.e. causation).

Finally, the Department contends that even if a  *prima facie* retaliation claim is assumed,  the

Department has proffered a legitimate non-discriminatory  reason for the challenged employment

actions which plaintiff has failed to rebut.

## III.  Discussion

Section 504 of   The Rehabilitation  Act of 1973, 29 U.S.C. § 701 *et seq*. (Rehabilitation

Act) provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of

her [] disability, be ... subjected to discrimination under any program or activity receiving federal

financial assistance.." 29 U.S.C. § 794(a).  In 1978, Congress expanded section 504 to cover federal

agencies as well as recipients of  federal funds,  thus recognizing in both Section 501 and Section

504  that  individuals  now have a private cause of action to obtain relief for handicap discrimination

on the part of the federal government  and its agencies, subject to the same procedural constraints

(administrative exhaustion, etc.) set forth in Title VII of the Civil Rights Act.  *Prewitt v United*

*States Postal Service*, 662 F.2d 292 (5th Cir. 1981). [4]

The standards to determine employment discrimination liability under the Rehabilitation Act

are the same as the standards applied under the  ADA.  *Sutton v Lader*, 185 F.3d 1203, 1207 n. 5

---

[4]  Because these sections are duplicative, some courts have limited disability discrimination
claims against the government  as employer to  actions brought under section 501, while others have
allowed litigants to proceed under either provision.  *See Milbert v Koop*, 830 F.2d 354 (D.C. Cir.
1987)(collecting cases).   In this circuit, a litigant may proceed under either or both.  *See Prewitt,
supra*.

(11th Cir. 1999).  Under the ADA's anti-retaliation provision, "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful  by this chapter." 42 U.S.C. §12203(a).  Since the Rehabilitation Act's  liability standards follow those of the ADA, the Rehabilitation Act's prohibition on employment discrimination has been interpreted to authorize  retaliation claims.  *See Stewart v  Happy Merman's Cheshire Bridge,* 117 F.3d 1278 (11th Cir. 1997); *Ellis v England*, 432 F.3d 1321 (11th Cir. 2005).

Following  the  ADA and  Title VII framework, a   claim of  intentional  retaliatory discrimination  under the Rehabilitation Act  is analyzed under the familiar *McDonnell-Douglas* burden-shifting analysis.  *Burgos v Napolitano,* 2009 WL 1515733 (11th Cir. 2009)*,* citing *Wright v Southland Corp.*, 187 F.3d 1287 (11th Cir. 1999) and *Lucas v W. W.  Grainger, Inc.*, 257 F.3d 1249, 1260-61 (11th Cir. 2001)(ADA context).  Under this paradigm, a plaintiff  establishes a *prima facie* retaliation claim by showing: (1) she  engaged in statutorily protected activity; (2) the alleged retaliator knew that plaintiff was involved in protected activity; (3) an adverse  employment action was taken against the plaintiff,  and  (4) a causal connection  exists between the protected activity and the adverse action.  *Burgos v Napolitano, supra*;  *Weixel v Board of Education*, 287 F.3d 138, 148 (2d Cir. 2002).

Once the employee  establishes a  *prima facie* case, the employer must offer a legitimate, non- retaliatory reason for its action.  *Pennington v City of Huntsville*, 261 F.3d 1262, 1266  (11th Cir. 2001)(Title VII).  If the employer proffers such explanation, the plaintiff must then produce evidence that the proffered reason is a pretext.  *Lubetsky v Applied Card Sys., Inc.*, 296 F.3d 1301 (11th Cir. 2002).

In this case,  the Department  does not dispute that Burgos engaged  in protected activity

when she filed her formal disability discrimination complaint in February 2004 and corresponding federal lawsuit in March 2006 (*Burgos I*). Nor does it dispute that Ruby Hogan and Denise Crawford, the final decision makers involved in the decision to permanently terminate Burgos in August, 2007, were aware of those prior complaints.

However, it contends that plaintiff is unable to establish the "adverse action" and "causation" element of her *prima facie* case. Further, with respect to Burgos' "actual" termination claim, it contends that the court lacks subject matter jurisdiction over the claim due to Burgos' election of review remedies, as detailed in the discussion which follows. Finally, the Department contends that it has proffered a legitimate, non-retaliatory reason for Burgos' actual termination – the disabling psychological disability documented by Burgos' own therapists – while plaintiff proffers no evidence of pretext to rebut it.

### A.  Subject Matter Jurisdiction

### 1.  Election of Appeal Remedies

The Merit Systems Protection Board (MSPB) has jurisdiction over appeals from specific types of federal agency employment actions, including suspensions, reductions in grade or pay, and termination. 5 U. S. C. § 7701; 5 C.F.R. §1201.3.

Actions before the MSPB are generally classified as either "pure" or "mixed."

A "pure" case results when an employee alleges harm from an improper, non-discriminatory personnel decision. The United States Court of Appeals for the Federal Circuit has exclusive jurisdiction to review final decisions of the Board over "pure" cases. 5 U.S.C. § 7703(b).

A "mixed" case results when a terminated employee asserts a discrimination claim in addition to claiming that his/ her termination was not for the efficiency of the service, i.e. that the

personnel decision resulted in part from prohibited discrimination.  §1614.302(a) (1), (2);  *Kean v Stone*, 966 F.2d 119, 121 (3d Cir. 1992); *Vanover v O'Leary,* 967 F. Supp. 1211 (N.D. Okl. 1997).

In mixed cases, the  MSPB has concurrent jurisdiction with the EEOC to determine all claims which raise a procedural violation of civil  service matters  in conjunction with the allegations of discrimination. *James v Levinson*, 680 F. Supp. 187 (E.D. Pa. 1988).  [5]

On the other hand, the EEOC has exclusive jurisdiction over cases in which only discrimination  issues are  raised, as well as those cases where there are no appeal rights to the MSPB.  *Id.     See Cruz v Department of  the Navy*, 934 F.2d 1240 (Fed. Cir. 1988)(MSPB has no jurisdiction over   "pure" or "naked" discrimination claims).

Therefore, the allegations in the complaint and manner in which the employee  chooses to purse his /her remedies are critical in determining  which agency has jurisdiction.  *Levinson, supra,* citing  Harden, *Mixed Cases: Untangling the Procedural  Web*, 29 How. L. J. 371 (1986).

Section   1614.302(b) of 29 C.F.R., governing *mixed case* federal   sector employment discrimination claims, further explains in pertinent part:

> An aggrieved person may initially file a mixed case complaint with an agency [the EEO] pursuant to this part *or* an appeal on the same matter with the MSPB pursuant to 5 C.F.R. 1201.151,  *but not both*. An agency shall inform every employee  who is the subject of an action that is appealable to the MSPB and who has either orally  or ir writing raised the issue of discrimination  during the processing of the  action of the right to file either a mixed case complaint with the agency or to file a mixed case

---

[5] Appeals of MSPB decisions in mixed cases are directed to the federal district court which has the authority to conduct a *de novo* review of the employee's discrimination claim.  As a matter of judicial economy, the federal appellate courts have determined that concurrent with a district court's authority to conduct *de novo* review of a federal employee's discrimination claim, the district court should also act as an appellate court, and conduct a review of the MSPB record on the issue of whether the termination was for the efficiency of the service.  *See e.g. Williams v Rice*, 983 F.2d 177, 179-80 (10th Cir. 1993).

appeal with the MSPB.  The person shall be advised that he or she may not initially file both a mixed case complaint and an appeal on the same matter and that which is filed first shall be considered an election to proceed in that forum.

29 C.F.R. §1614.302(b) (emphasis added).

As is apparent from the clear text of § 1614.302(b), a claimant may not file both a *mixed case* complaint and an *mixed case* appeal pursuant to 5 C.F.R. 1201.151, which applies to allegations that a challenged personnel action was "based, in whole or in part, on prohibited discrimination."

Citing this provision here, the Department urges here that Burgos' first filed appeal of the Department's actual termination decision to the MSPB was a binding election of remedies, giving the MSPB exclusive jurisdiction over her "actual termination" claim.  The Court disagrees, as Burgos' direct appeal to the MSPB plainly was not a "mixed case appeal" as that concept is understood within the confines of this regulatory scheme.

Rather, Burgos' appeal to the MSPB falls into the category of "pure" appeals, as it essentially alleges that she was fired without cause, on the basis of a mistake of fact regarding the permanency of her psychological condition. [6]   Therefore, the first sentence of section 1614.302(b) does not prohibit her simultaneous pursuit of the MSPB pure appeal with her prior

---

[6]  In her appeal notice to the MSPB, Burgos asserted, "I was removed while there was in place both an approved workers compensation claim for a physical injury and a pending workers compensation claim for a mental condition.  I was improperly removed under the false and unsupported assumption that I was permanently disabled.  Because of the pending and approved workers compensation claims and my approved leave to undergo surgery and recovery, I rightfully refused demands to undergo fitness for duty physical and psychological tests." [DE# 13-36].

This describes a non-discriminatory reason for her employer's decision – a mistake of fact. She did not contend, before the MSPB, that her removal was also in retaliation for prior EEO activity or that it was in continuation of an ongoing pattern of discrimination that violated the Rehabilitation Act.

complaint of retaliatory disability discrimination lodged before the EEOC. While the second sentence of section 1614.302(b) explicitly prohibits the filing of both a mixed case complaint and a mixed case appeal, Burgos did not file a mixed case appeal. Therefore, the second sentence of 1614.302(b) has no application here. Finally, the third sentence of § 1614.302(b) simply reiterates the rule from the opening sentence that a claimant may not initially file both a mixed case complaint and an appeal "on the same matter."

Therefore, nothing in § 1614.302(b) barred Burgos from pursuing a retaliation disability discrimination complaint based on her "proposed" or "actual" termination before the EEOC, with judicial review in this court, even though she initially challenged the "actual termination" decision by direct "pure" appeal to the MSPB. *See Amirmokri v Department of Energy*, 310 Fed. Appx. 410 (Fed. Cir. 2009).

## 2. Exhaustion of Administrative Remedies

Before pursuing claims in federal court, employment discrimination plaintiffs must exhaust their administrative remedies by filing a charge of discrimination with the EEOC. *Taylor v Books a Million, Inc.,* 296 F.3d 376 (5th Cir. 2002), *cert. den*., 537 U.S. 1200 (2003). *See also Pacheco v Mineta*, 448 F.3d 783, 788 (5th Cir), *cert. den*, 549 U.S. 888, 127 S. Ct. 299, 166 L.Ed.2d 154 (2006). A subsequent judicial complaint may encompass any kind of discrimination like or related to the allegations contained in the underlying EEO charge and growing out of such allegations during the pendency of the case before the EEOC. *Sanchez v Standard Brands, Inc*. 431 F.2d 455 (5th Cir. 1970). *See also National Ass'n of Government Employees v City Public Service Board of San Antonio, Texas,* 40 F.3d 698 (5th Cir. 1994).

Here, plaintiff filed her formal EEOC charge of retaliatory discrimination on March 21,

2007, after the Department proposed her termination from employment on March 9, 2007.  Soon after the case was lodged in the EEOC for investigation, the Department actually terminated her employment, effective August 15, 2007.  It is uncontradicted that she failed to amend her EEOC charge after her actual termination.

On August 20, 2007, the EEO investigation ended, with the final report of investigators issued September 7, 2007.  On August 29, 2008, an EEOC administrative law judge issued final summary judgment in favor of the department on all claims.

Recognizing that the "purpose of a charge of discrimination is to trigger the investigatory and conciliatory procedures of the EEOC," *Sanchez* at 466, it is logical "to limit the permissible scope of the civil action to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.*  In this case, it is inconceivable that the EEOC's investigation into plaintiff's March 21, 2007 formal charges of unlawful retaliation based on her "proposed termination" would not have included inquiry into the actual termination decision which was made less than five months later on August 3, 2007 -- before the EEO investigation formally concluded on August 20, 2007.  Indeed, the investigator's final report references the fact of Burgos' final termination, effective August 15, 2007, and comments on the Department's response to the allegation that the termination was in reprisal for prior EEO activity. [DE# 13-10, pp. 9-10].

Further, on August 14, 2007, Burgos filed, at the EEO investigator's request, an amendment to her statement of remedy to include, *inter alia,* reinstatement as redress for alleged "discriminatory termination." [DE# 26-3], and on August 17, 2007, submitted a supplemental memo to the investigator taking issue with numerous "discrepancies" contained within the Department's (actual) termination letter of August 3, 2007. [DE# 26-2].

16

Under this sequence of events, the court is satisfied that Burgos' "actual termination" claim is within the scope of the EEOC investigation which could "reasonably be expected to grow out of the charge of discrimination," *Pacheco* at 789, and concludes that Burgos exhausted her administrative remedies with respect to her actual termination claim when she filed administrative complaint before the EEOC. *Mullins v Crowell*, 228 F.3d 1305 (11th Cir. 2000); *Burns v Air Liquide America L.P.*, 515 F. Supp. 2d 748 (S.D. Tex. 2007)(although employee's EEOC charge was filed before her termination and she did not amend EEOC charge after termination, EEOC investigation into her charges of age and disability discrimination 'threatening her continued employment' would have included inquiry into actual termination only 18 days later and nearly a year before right- to-sue letter was issued).

### B.  Failure to Establish *Prima Facie* Case

To establish an actionable "adverse action," plaintiff must show an employment act which is "material and significant and not trivial," one which " might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burgos v Napolitano, supra* at 190, citing *Burlington Northern & Santa Fe Railway v White*, 548 U.S. 53 (2006);  *Everson v Coca- Cola Co.* 241 Fed. Appx. 652 (11th Cir.2007)(unpub).

The proposed and actual termination employment actions at issue here unquestionably meet this definition.  *See Stone v GEICO General Ins. Co.,*  279 Fed. Appx. 821 (11th Cir. 2008)(unpub.)(termination qualified as adverse action in ADEA retaliation claim) *Cf. Higgins v Gonzales*, 481 F.3d 578, 587 (8th Cir. 2007)(recommendation for termination did not constitute adverse action where employee was not terminated, but offered new position in another office)

On the other hand, the proposed 14 day suspension for Burgos' alleged AWOL status clearly

does not. This action is not "materially adverse" as a matter of law because it is undisputed that the Department never implemented the proposed disciplinary action. *See Nagle v Village of Calumut Park*, 554 F.3d 1106 (7th Cir. 2009)(suspension not served is not "materially adverse" employment action); *Butler v Potter*, 2009 WL 804722 (E. D. N. Y. 2009) and cases cited *infra.*

Likewise, the Department's alleged failure to respond to the FMLA request, order directing her to submit to physical fitness for duty exam, and telephone call/home visits regarding document delivery confirmation do not meet the definition of materially "adverse actions" as a matter of law. *See generally Everson v Coca-Cola, Co.,* 241 Fed. Appx. 652 (11th Cir.2007)(unpub)(employer's alleged failure to timely respond to employee's internal complaints and failure to timely reinstate benefits did not constitute "adverse employment action"); *Rademakers v Scott*, 2009 WL 3448848 (11th Cir. 2009)(unpub.)(investigation of former sheriff's office detective for misconduct would not dissuade reasonable worker from making or supporting charge of discrimination); *Nagle v Village of Calumut Park, supra* (materially adverse change must be more disruptive than a mere inconvenience or an alteration of job responsibilities in order to be considered retaliation under Title VII).

Thus, the court's inquiry on the sufficiency of Burgos' *prima facie* claim is appropriately limited to the proposed and actual termination employment actions. Here, the analysis turns on whether Burgos can demonstrate a causal connection between the proposed/actual termination of her employment and the filing of her disability discrimination lawsuit in *Burgos I*.

Burgos relies primarily on the "temporal proximity" between her proposed termination in March, 2007 and her post judgment motion practice and appellate activity in *Burgos I* as evidence of causation. However, this reliance is misplaced as it was the filing of her lawsuit in *Burgos I* that

qualified as protected activity.  *See Everson v Coca-Cola Co., supra*, citing *Donnellon v Fruehauf Corp.*, 794 F.2d 598, 601 (11ᵗʰ Cir. 1986).

      Notably,  the Department issued notice of Burgos'  proposed termination on March 9, 2007 – one year after plaintiff filed  *Burgos I*  on March 24, 2006.  The Department  issued notice of Burgos' actual termination on August 3, 2007 – seventeen months after plaintiff filed  *Burgos I.*  Where, as here, temporal proximity is the only basis to support an inference of causation, and  there is substantial delay between the protected activity and alleged retaliatory event, plaintiff fails to establish a *prima facie* case of retaliation as a matter of law.  *Everson v Coca Cola Co., supra* (employee terminated more than four years after she filed suit*)*; *Burgos v Napolitano, supra (.*six month delay between filing earlier EEOC claim and alleged adverse action insufficient, without more, to support inference of causation)(dicta); *Higdon v Jackson*, 393 F.3d 1211 (11ᵗʰ Cir. 2004)(three month delay insufficient). *See also  Slattery v Swiss Reins. Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001).

      Finally, even assuming *arguendo* that Burgos established a  *prima facie* case retaliation case based on proposed or actual termination, she necessarily suffers adverse summary judgment because the Department has proffered a legitimate, non discriminatory rationale for its actions which  Burgos does not  rebut with any evidence from  which a reasonable fact finder could infer pretext.

      Plaintiff does not dispute that she suffers the psychological  problems  described in the Seidmans' report, or that she declined to submit to the physical or  psychological exams  requested by the Department to test the conclusions of the Seidmans and verify the extent to which  her reported mental disabilities impacted her ability to perform the duties of her position.

      While plaintiff asserts it was reasonable for her to resist the ordered physical exam in light

of the pendency of her then scheduled shoulder surgery, and to resist submission to a "voluntary" psychiatric exam in light of her pending workers' compensation care and treatment, there is no evidence suggesting she was acting on competent medical advice in resisting these requests, and no evidence that she gave the Department advance notice of her intent and reasons for refusing to submit to the physical exam.   Frustrated in its ability to test and explore the ramifications of the psychological assessment proffered by Burgos' own treating therapists, it was reasonable for Department to rely on that assessment in deciding to terminate Burgos based on her medical inability to perform the duties of her job.

While Burgos raises a perceived inconsistency between the Department's initial request for "clarification" of her "TDD" status vis a vis her ability to perform the duties of her job following initial issuance of the Seidmans' "updated" psychological assessment, and the Department's later conclusion that her inability to perform was "evident" based on that same report, no reasonable fact finder could interpret the Department's reassessment in this regard as evidence of pretext given the undisputed sequence of intervening events – particularly in light of the Burgos' intervening refusal to submit to independent medical testing.

Based on the foregoing, plaintiff fails to establish a *prima facie* case for unlawful retaliation under the Rehabilitation Act based on the proposed or actual termination.   Alternatively, even assuming the existence of a *prima facie* case on these claims, plaintiff fails to rebut the Department's proffered legitimate, non-retaliatory reason for its action with any evidence from which a reasonable fact finder could infer pretext.   Accordingly, summary judgment is appropriately entered

in favor of the Department on the retaliatory disability discrimination claim. [7]

## Conclusion

_____Based on the foregoing, it is **ORDERED AND ADJUDGED**:

1. The defendant's motion for summary judgment [DE# 9] is **GRANTED.**

2. Final summary judgment pursuant to Rule 58 shall enter by separate order of the court.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida this 5th day of March, 2010.


_Daniel T. K. Hurley_
Daniel T. K. Hurley
United States District Judge


cc.  All counsel

_____

[7]    Plaintiff also asserts a separate claim for "retaliatory harassment," or "hostile work environment" (Count 2). This claim is without evidentiary basis as there is no evidence of disability-based or retaliatory harassment which was so objectively and subjectively humiliating and intimidating so as to unreasonably interfere with the plaintiff's ability to perform her work. *See generally Caprio v Peters*, 345 Fed. Appx. 824 (3d Cir. 2009); *Bellino v Peters,* 530 F.3d 543 (7[st] Cir. 2008); *Rios-Jimenez v Principi*, 520 F.3d 31 (1st Cir. 2008).  None of the acts which Burgos identifies in support of her claim that she was subjected to a hostile work environment show that the Department's actions were spurred by perceived or real disabilities, or the fact of her prior EEO activity.   Rather, as discussed above, after receiving the Seidman's updated psychological assessment in December 2006, the Department had reasonable basis to engage in each of the challenged employment actions.